# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Civil Action No. 9:22-cv-80614**

ANDREW ASTROVE, an individual,

    Plaintiff,

v.

JOHN DOE, an individual;

    Defendant.

_____/

## EMERGENCY MOTION FOR
## TEMPORARY RESTRAINING ORDER WITHOUT NOTICE
## AGAINST DEFENDANT JOHN DOE

Plaintiff ANDREW ASTROVE, an individual ("Plaintiff"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 65(b) as well as Section 10A of the Court's Administrative Procedures for Electronically Filing Documents, hereby respectfully requests that this Court enter without notice to Defendant JOHN DOE, an individual, a Temporary Restraining Order (TRO) against him freezing his assets -- including the Destination Addresses (defined below) maintained by him, for him, or by any entity under his control.

In support of the request for a TRO herein, Plaintiff alleges as follows:

### FACTUAL BACKGROUND

On or about January 22, 2022, Plaintiff was contacted by Defendant JOHN DOE on LinkedIn, an online professional networking and career development service.[1] After exchanging some messages on LinkedIn, Plaintiff began engaging in conversations with Defendant on the messaging platform WhatsApp.[2] Defendant directed their conversation to investing and whether Plaintiff traded

---

[1] Docket Entry No. ("DE") 1 [Complaint] at ¶ 1. *See also*, Declaration of ANDREW ASTROVE (Dated: April 20, 2022) [the "Astrov Decl."], a copy of which is attached hereto as **Exhibit "A"**.

[2] Astrov Decl. at ¶ 4 (citing Complaint at ¶ 11).

any cryptocurrency.[3] Defendant further said he could show Plaintiff how easy it was to make money with cryptocurrency.[4]

Under Defendant's guidance, Plaintiff opened a cryptocurrency account at U.S.-based cryptocurrency exchange Coinbase, which Plaintiff funded with monies that were used to purchase cryptocurrency that was subsequently transferred to what Plaintiff believed was another cryptocurrency exchange, "MINE DIGITAL."[5] Plaintiff funded his Coinbase account with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00); used those funds to purchase Tether[6], and then sent those Tether to an investment account allegedly created for Plaintiff that was overseen by Defendant JOHN DOE.[7]

According to Defendant, the external investment account into which Plaintiff's Tether was being deposited was maintained at Australian cryptocurrency exchange Mine Digital.[8] Defendant provided Plaintiff Mine Digital's purported exchange website URL as: "MCWLEX.xyz" and instructed Plaintiff to set up his cryptocurrency account there.[9] As Plaintiff later learned, the correct website URL for Mine Digital is "minedigital.exchange," not "MCWLEX.xyz."[10] Upon information and belief, Defendant cloned the real Mine Digital website so that his cloned copy would appear to be a legitimate cryptocurrency exchange.[11] The cloned site to which Defendant directed Plaintiff was

---

[3] *Id.*

[4] *Id.*

[5] *Id.* (citing Complaint at ¶ 12).

[6] Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains. It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth One Dollar ($1.00 USD). Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00. Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

[7] Astrov Decl. at ¶ 4 (citing Complaint at ¶ 13).

[8] *Id.* (citing Complaint at ¶ 14).

[9] *Id.* (citing Complaint at ¶ 15).

[10] *Id.* (citing Complaint at ¶ 16).

[11] *Id.* (citing Complaint at ¶ 17).

not legitimate, though; it served as an engine of theft for Defendant, providing him a mechanism to proffer Plaintiff false account statements and real-time values of cryptocurrency markets on legitimate exchanges that masked the fraudulent scheme Defendant was perpetrating upon Plaintiff.[12] In essence, the "Mine Digital account" to which Plaintiff was sending his cryptocurrency holdings was actually -- unbeknownst to Plaintiff -- Defendant's own private cryptocurrency address.[13]

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant.[14]

For example, Plaintiff's stolen assets have been traced to the following cryptocurrency wallet addresses at cryptocurrency exchanges FTX, KRAKEN, OKX (OKEx), BINANCE, GATE.IO, and ZB.COM -- wallet addresses which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff[15]:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | FTX | e9d3aa47497e63d27916ec0947174e2f778581bb | USDT | 380,056.73823 USDT |
| 2. | Kraken | 57ae39494b91f947866b86d9655c0e7fdc093f14 | USDT | 169,304.42112 USDT |
| 3. | Bitfinex.com/ Crypto.com | d4dcd2459bb78d7a645aa7e196857d421b10d93f | USDT | 83,401.620357 USDT |
| 4. | OKX (OKEx) | 39243d72d9c26d26bd8317838908e7f2682af284 | USDT | 80,060.512581 USDT |

---

[12] *Id.*

[13] *Id.* (citing Complaint at ¶ 18).

[14] *Id.* (citing Complaint at ¶ 19).

[15] *Id.* (citing Complaint at ¶ 20).

Civil Action No. 9:22-cv-80614

| | | | | |
|---|---|---|---|---|
| 5. | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 60,978.520990 USDT |
| 6. | FTX | ccfaedbcfe19f10607ce7f9b0d64295d979b606d | USDT | 38,726.667998 USDT |
| 7. | gate.io | 49b8229ddd86b47e6ebab43bd54b71e80aff3a0f | USDT | 18,910.227524 USDT |
| 8. | ZB.com | 15df4ca7b60d09f0070e4c42ef08031c73167686 | USDT | 5,908.5983 USDT |
| | | | TOTAL | **837,347.3072 USDT** |

In addition to the foregoing, as of the date of this filing, blockchain analytics have traced Plaintiff's stolen funds to and/or through the following cryptocurrency wallet addresses (among others), which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets and which are believed to still be holding some of the assets stolen from Plaintiff[16]:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 431758befb274b88599401a1d7445dcb50c71122 | USDT | 11,721.149170 USDT |
| 2 | e7b36e1a636d31aa3d2e8918f80fecdb41f8cd6d | USDT | 7,704.7557322 USDT |
| 3 | e0fe2b4c9f7d58a05b4a16b71ef8afb42557aef2 | USDT | 5,980.596504 USDT |
| 4 | 7b6d0d7a60f3b14f721195c0d289807e9dde9559 | USDT | 2,444.308878 USDT |
| | | TOTAL | **27,850.81028 USDT** |

As a result of the foregoing scheme, Plaintiff has lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left trying to get answers to help her uncover where his funds are or where they went after they were stolen by JOHN DOE.[17] Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendant JOHN

---

[16] *Id.* (citing Complaint at ¶ 21).

[17] *Id.* (citing Complaint at ¶ 22).

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

DOE's assets -- including the Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control -- to preserve the *status quo ante* pending the outcome of this litigation.

## **LEGAL ARGUMENT**

### I. **Rule 65 Permits Entry of a Temporary Restraining Order Without Notice**

1. Rule 65 permits this Court to enter a Temporary Restraining Order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition."[18] Further, the movant's counsel must certify in writing "any efforts made to give notice and the reasons why it should not be required."[19]

2. As to the first prong of Rule 65(b)(1), Plaintiff's declaration, summarized and cited above, shows the likelihood of immediate and irreparable injury or loss. Plaintiff was clearly victimized and robbed by JOHN DOE; and the stone wall of obfuscation erected by the anonymous nature of cryptocurrency transactions significantly inhibits Plaintiff's ability to trace his stolen funds or even identify JOHN DOE by his proper legal name at this point.

3. By freezing JOHN DOE's assets -- including the Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff -- Plaintiff will have a foothold in his arduous climb to recovering his stolen cryptocurrency before JOHN DOE can further transfer it beyond Plaintiff's reach.

4. With regard to the second prong of Rule 65(b)(1), a TRO is warranted without notice to JOHN DOE. JOHN DOE's proper legal name is unknown at this point, and only through expedited discovery to the cryptocurrency exchanges at which the Destination Addresses are/were

---

[18] Fed.R.Civ.P. 65(b)(1)(A).
[19] Fed.R.Civ.P. 65(b)(1)(B). *See also*, *Sun Commodities, Inc. v. Miami Produce Int'l Imp. & Exp., Corp.*, 2008 U.S. Dist. LEXIS 85192 (S.D. Fla. Oct. 7, 2008).

maintained might Plaintiff be able to uncover JOHN DOE's name and a location -- either physical or electronic -- at which he can be apprised of the charges brought against him in this lawsuit so he may defend himself against those charges, if he so chooses.

5. Furthermore, Plaintiff certifies a deep concern that with each passing hour, JOHN DOE will dissipate any traceable funds, either into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

### II. The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief

6. Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See, Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc.*, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see also, In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004) (citations omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id.* at 1085.

7. Moreover, Rule 64 of the Federal Rules of Civil Procedure provides that when state law authorizes a prejudgment remedy to secure assets subject to a plaintiff's state law claims, state law governs such relief. Rule 64, Fed.R.Civ.P.; *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974).

8. Here, Plaintiff seeks equitable relief in addition to his legal remedies and is entitled to an injunction to maintain the *status quo* until the claims in the Complaint can be resolved. Amongst

other claims and remedies sought, Plaintiff alleges violations of numerous common law torts (conversion, replevin, unjust enrichment) and requests relief in the following form of equity:

- the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant JOHN DOE, an individual, in the Destination Addresses; and [entry of an Order] that the wrongfully obtained property be restored to Plaintiff.

9. Additionally, with regard to the claim for imposition of a constructive trust, Florida courts have authorized equitable injunctive relief to secure the assets subject to the claim. *Friedman v. Heart Institute of Port St. Lucie, Inc.*, 863 So.2d 189, 192 (Fla. 2003); *Briceño v. Bryden Investments, Ltd.*, 973 So.2d 614, 617 (Fla. 3d DCA 2008) (and cases cited therein).

10. In disputes strikingly similar to the instant action, both this court and others have awarded the equitable relief sought by Plaintiff here. *See*, *Martinangeli v. Akerman, LLP*, Case No. 1:18-cv-23607-UU, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) (entering Temporary Restraining Order without notice to defendant whose assets were thereby frozen); *Heissenberg v. Doe*, Case No. 21-CV-80716-ALTMAN/Brannon (S.D. Fla. April 23, 2021) at DE 14 (*same*); *Williams v. Doe*, Case No. 6:21-cv-03074-RK (W.D. Mo. Apr. 1, 2021) at DE 18 (*same*), copies of which are attached hereto as **Composite Exhibit "B"**.

11. Accordingly, Plaintiff is entitled to a Temporary Restraining Order if the other requirements for a Temporary Restraining Order have been met. For the reasons described below, Plaintiff is entitled to such relief.

**III.  A Temporary Restraining Order Is Appropriate to Prevent Immediate and Irreparable Harm**

12. In considering a Temporary Restraining Order, the Court must consider the following: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4) the threatened injury to the petitioner outweighs the possible harm to the respondent; and (5) a temporary injunction will not disserve the public interest. *City of Miami Beach v. Kuoni Destination Mgmt., Inc.*, 81 So. 3d 530, 532 (Fla. 3d DCA 2012); *see*

*also Siegel v. LePore,* 234 F.3d 1163, 1179 (11th Cir. 2000), *cert. denied,* 531 U.S. 1005, 121 S. Ct. 510, 148 L. Ed. 2d 478 (2000) (citations omitted). As shown below, Plaintiff satisfies each element of that standard.

### IV. Plaintiff Has a Substantial Likelihood of Success on the Merits of Her Claims

13. The harms alleged in the Complaint, as well as the facts set forth in Plaintiff's declaration, make clear that Plaintiff was victimized by JOHN DOE who -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

14. Based on that fraudulent behavior, Plaintiff has asserted claims for: (1) fraudulent inducement, (2) negligent misrepresentations, (3) replevin, (4) conversion, and (5) unjust enrichment.

15. Moreover, any and all cryptocurrency assets held in the Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff must be held in a constructive trust for Plaintiff's benefit, as JOHN DOE is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

16. In light of the foregoing, there is a high likelihood that Plaintiff will succeed on his claims.

17. As for Plaintiff's request that a constructive trust be applied, Florida law provides that a constructive trust is appropriately imposed as follows:

> [A] court of equity will raise a constructive trust and compel restoration where one through actual fraud, abuse of confidence reposed and accepted, or through order questionable means gains something for himself which equity and good conscience he should not be permitted to hold.

*Quinn v. Phipps*, 93 Fla. 803, 113 So. 419, 422 (Fla. 1930) (citations omitted). A constructive trust is "created by law to do equity under the circumstances without regard to intent." *Palmland Villas I Condo. Ass'n, Inc. v. Taylor*, 390 So.2d 123, 125 (Fla. 4th DCA 1980). A constructive trust is therefore appropriately established "to right a wrong committed and to prevent unjust enrichment of one person at the

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880, 891 (11th Cir. 2003) (applying Florida law).

18. As such, success on the merits of Plaintiff's common law claims is very likely.

## V. **Plaintiff Will Suffer Irreparable Harm if Defendant John Doe Is Not Enjoined**

19. There is a significant risk that JOHN DOE may dissipate the money stolen from Plaintiff or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

20. Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze JOHN DOE's assets, including those in the Destination Addresses, to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiff.

## VI. **There Is Little Prejudice to Defendant Doe If the Temporary Restraining Order Is Entered**

21. While Plaintiff would be severely prejudiced if JOHN DOE dissipates the funds wrongfully taken from Plaintiff, JOHN DOE faces no such prejudice. An order forbidding JOHN DOE from moving his assets will, at worst, delay JOHN DOE from shifting his purloined funds to an untraceable cryptocurrency accounts; and at best, will help maintain the *status quo* for Plaintiff to recover the valuable assets illegally obtained from Plaintiff's cryptocurrency account.

## VII. **Plaintiff Has No Adequate Remedy at Law**

22. Plaintiff's only remedy to recover the funds fraudulently taken from him is through his right to equitable relief in the form of enjoining asset dissipation by JOHN DOE, beginning with imposition of a constructive trust to prevent the further dissipation of Plaintiff's assets. A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

## VIII. Entering a Temporary Restraining Order Is In the Public Interest

23. The public interest strongly supports entry of a Temporary Restraining Order here.

24. Moreover, entering a Temporary Restraining Order would actually serve the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined investor assets in this action.

## CONCLUSION

For the foregoing reasons, Plaintiff ANDREW ASTROVE respectfully requests that this Court find Plaintiff has satisfied the elements of his claim for preliminary injunctive relief and that the Court enter a Temporary Restraining Order without notice to Defendant JOHN DOE, freezing his assets -- including the Destination Addresses to which JOHN DOE transferred any portion of the funds stolen from Plaintiff -- to preserve the *status quo ante* pending the full adjudication of Plaintiff's claims.

Respectfully submitted,

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:   (954) 516-6000

By: _____
DAVID C. SILVER
Florida Bar No. 572764
E-mail: DSilver@SilverMillerLaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@SilverMillerLaw.com

*Counsel for Plaintiff Andrew Astrove*

Dated:   April 20, 2022