# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Civil Action No. 9:22-cv-80614-RAR

ANDREW ASTROVE, an individual,

      Plaintiff,

v.

JOHN DOE, an individual;

      Defendant.

_____/

## MOTION FOR EXPEDITED DISCOVERY

Plaintiff ANDREW ASTROVE, an individual ("Plaintiff"), by and through undersigned counsel and pursuant to Fed.R.Civ.P. 16(b), 26(d), 30(a)(2)(A)(iii), 34(b), and 45 and Local Civil Rules 7 and 26.1, hereby requests entry of an Order permitting Plaintiff to engage in expedited discovery from any relevant third-parties to enable Plaintiff to secure documents and information pertaining to Defendant JOHN DOE, an individual ("JOHN DOE") -- a cryptocurrency wallet/account holder who is alleged to have possessed and/or stolen from Plaintiff millions of dollars in cryptocurrency belonging to Plaintiff.

    Because of the exigent circumstances and this Court's broad discretion in directing discovery and managing its docket -- particularly in the preliminary injunction context -- expedited discovery is warranted to resolve the issue of whether the April 22, 2022 Temporary Restraining Order (TRO) entered by the Court *without* notice against JOHN DOE [Docket Entry No. ("DE") 4] and subsequently modified by the Court [DE 12] should be expanded into a preliminary or permanent injunction *with* notice to JOHN DOE. Conscious of the time constraints and the inherent burdens of discovery, Plaintiff has already crafted narrowly-tailored categories of documents to be sought from the non-parties via subpoenas that set forth the requests which he intends to employ to ensure the

full, fair, and efficient development of the factual record necessary to adjudicate the material issues raised in the Complaint and the injunction issue.

At this time, Plaintiff's proposed expedited discovery is focused solely on JOHN DOE's identity and the cryptocurrency wallets and accounts JOHN DOE owned, operated, or controlled at least in part, as those wallets/accounts pertain to the central issues in dispute in the Complaint and the TRO (which Plaintiff will request be extended into a preliminary or permanent injunction). To be clear, Plaintiff's expedited discovery efforts are not related to monetary damages or any issues beyond those that must be resolved at this preliminary stage; rather, the documents and information sought by Plaintiff are required for the Court to properly evaluate whether -- after JOHN DOE has been identified -- the TRO should be extended into a preliminary or permanent injunction with notice to JOHN DOE.

In support of his request for expedited discovery, Plaintiff alleges as follows:

1.     As alleged in great detail in the Complaint[1], this action arises from a fraudulent scheme that sought to, and ultimately did, steal One Million Four Hundred Thousand Dollars ($1,400,000.00) worth of cryptocurrency from Plaintiff.

2.     After gaining Plaintiff's confidence and inducing Plaintiff into a cryptocurrency investment plan, JOHN DOE duped Plaintiff into depositing his cryptocurrency portfolio holdings into what Plaintiff was led to believe was an account maintained at Australian cryptocurrency exchange Mine Digital when it was actually -- unbeknownst to Plaintiff -- JOHN DOE's own private cryptocurrency address.[2]

3.     Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that JOHN DOE has stolen all of Plaintiff's assets; and those assets have been

---

[1] DE 1 [Complaint].
[2] Complaint at ¶¶ 11-18.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

transferred to cryptocurrency accounts under JOHN DOE's sole control or have been liquidated into fiat currency and dissipated by JOHN DOE.[3]

4.     For example, Plaintiff's stolen assets have been traced to the following cryptocurrency wallet addresses at cryptocurrency exchanges FTX, KRAKEN, OKX (OKEx), BINANCE, GATE.IO, and ZB.COM -- wallet addresses which are believed to be owned or controlled by JOHN DOE or an unknown third-party to whom he has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff[4]:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | FTX | e9d3aa47497e63d27916ec0947174e2f778581bb | USDT | 380,056.73823 USDT |
| 2. | Kraken | 57ae39494b91f947866b86d9655c0e7fdc093f14 | USDT | 169,304.42112 USDT |
| 3. | Bitfinex.com/ Crypto.com | d4dcd2459bb78d7a645aa7e196857d421b10d93f | USDT | 83,401.620357 USDT |
| 4. | OKX (OKEx) | 39243d72d9c26d26bd8317838908e7f2682af284 | USDT | 80,060.512581 USDT |
| 5. | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 60,978.520990 USDT |
| 6. | FTX | ccfaedbcfe19f10607ce7f9b0d64295d979b606d | USDT | 38,726.667998 USDT |
| 7. | gate.io | 49b8229ddd86b47e6ebab43bd54b71e80aff3a0f | USDT | 18,910.227524 USDT |
| 8. | ZB.com | 15df4ca7b60d09f0070e4c42ef08031c73167686 | USDT | 5,908.5983 USDT |
| | | | TOTAL | **837,347.3072 USDT** |

5.     As a result of the foregoing scheme, Plaintiff has lost over One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left trying to get answers to help him uncover where his funds are or where they went after they were stolen by JOHN DOE.

---

[3] *Id.* (citing Complaint at ¶ 19).

[4] *Id.* (citing Complaint at ¶ 20).

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

6.      Plaintiff needs the Recipient Cryptocurrency Exchanges listed above to identify JOHN DOE (*e.g.*, name, physical address, mailing/contact address) so Plaintiff can properly name him in this lawsuit and provide him due notice before requesting that the Court extend the TRO into either preliminary or permanent injunctive relief.

7.      Plaintiff further needs to conduct an exigent investigation of all Recipient Cryptocurrency Exchange accounts held by, for, or on behalf of JOHN DOE to identify where Plaintiff's funds were transferred.  To the extent JOHN DOE has already disposed of any of Plaintiff's assets, Plaintiff can serve a subpoena on any other cryptocurrency exchange, wallet operator, or financial institution to which those assets were transferred in a further effort to freeze them before they are moved again or liquidated in their entirety.

8.      Likewise, as a means of tracing those assets back to Plaintiff through JOHN DOE and beyond, Plaintiff needs the ability to serve a subpoena upon any third-party claiming to be a bona fide purchaser in good faith who now holds, or once held, the cryptocurrency assets stolen from Plaintiff by JOHN DOE.

9.      In light of the foregoing, Plaintiff submits that the following narrowly-tailored requests to each Recipient Cryptocurrency Exchange will provide him valuable information he needs to identify JOHN DOE and protect his interests as well as his assets while affording JOHN DOE notice of this action:

> a.   All documents regarding, reflecting, recording, or memorializing account opening and closing, including JOHN DOE's actual legal name, all proofs of identification (such as government-issued photo ID), date of birth, Social Security Number, telephone number, electronic mail address, residential/mailing address, and Know Your Customer ("KYC") and Anti-Money Laundering ("AML") information compiled by *<<YOUR EXCHANGE>>*.
>
> b.   All documents regarding, reflecting, recording, or memorializing transactions, funding, registered funding sources (*i.e.*, bank accounts or other sources of funding tied to JOHN DOE's account[s]), and account holdings, including but

not limited to transactions into or out of the following wallet address: _____ (the "Wallet Address").

    c.    All transactional logs for all activity in JOHN DOE's *<<EXCHANGE>>* account(s), including but not limited to all holding pages, trade confirmations, beginning balance, all trades (whether initiated by JOHN DOE or someone else) or trade orders (whether executed or unexecuted), all date/time stamps for each trade, date/time stamps showing when each trade was filled (as applicable), account balance following each executed trade, the ending balance, and the names and public addresses of all counterparties to each trade.

    d.    All documents regarding, reflecting, recording, or memorializing any suspicion or belief held by *<<YOUR EXCHANGE>>* that the JOHN DOE account at *<<YOUR EXCHANGE>>* to which the Destination Address is linked was linked to or associated with any other *<<EXCHANGE>>* account(s).

    e.    Correspondence exchanged by and between *<<YOUR EXCHANGE>>* and JOHN DOE.

    f.    Correspondence exchanged by and between *<<YOUR EXCHANGE>>* and any third-party concerning or relating to JOHN DOE. <u>NOTE</u>: The requested correspondence is not to include any Suspicious Activity Reports (SARs) filed by *<<YOUR EXCHANGE>>* with any governmental regulator or other authority, any drafts of such SARs, or any documents that expressly reference any SARs being filed.

10.    By being provided JOHN DOE's identifying information by the Recipient Cryptocurrency Exchanges, Plaintiff will be able to employ appropriate legal measures and afford JOHN DOE due process in defending himself against Plaintiff's claims of theft.

11.    Additionally, once a Recipient Cryptocurrency Exchange has identified the accountholder to whom Plaintiff's stolen funds flowed, the accountholder would be asked to provide the following to demonstrate the accountholder is a bona fide purchaser in good faith and not JOHN DOE himself:

    All documents and information, including but not limited to: (i) Transactional IDs related to the accountholder's acquisition of the cryptocurrency in question; and (ii) information in his/her possession identifying the seller from whom he/she acquired the tainted cryptocurrency in question -- showing how the cryptocurrency was obtained, from whom the cryptocurrency was obtained, and the payment records for his/her acquisition of the tainted cryptocurrency.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

12.     Certain information related to the operative facts in this matter -- particularly JOHN DOE's identity -- is within the Recipient Cryptocurrency Exchanges' sole possession, custody, and control or within the control of other third parties who will be identified in discovery.

13.     Expedited discovery would facilitate the management of this action, conserve the resources of the parties and the Court, and move the case toward an earlier disposition without prejudice to JOHN DOE.

## <u>LEGAL ARGUMENT</u>

This Court has broad discretion to manage the timing of discovery, especially where a request for a preliminary injunction makes it infeasible to wait for the Rule 26(f) conference to serve discovery requests. *See, Integra Bank N.A. v. Trans Continental Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7781, *7 (M.D. Fla. Feb. 2, 2007) (Federal Rules of Civil Procedure "expressly provide that a Court may shorten the time for a party to provide discovery"); *Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005) (Court has "broad discretion in managing pretrial discovery matters"), quoting *Perez v. Miami-Dade Co.*, 297 F.3d 1255, 1263 (11th Cir. 2002); *see also*, Fed.R.Civ.P. 26(d) (permitting deviation from normal rule when "authorized ... by order"); *id.*, Advisory Committee Notes ("This subdivision is revised to provide that formal discovery ... not commence until the parties have met and conferred as required by subdivision (t).  Discovery can begin earlier if authorized . . . by . . . order . . . .  This will be appropriate in some cases, such as those involving requests for a preliminary injunction . . . .).  The Federal Rules of Civil Procedure contemplate that discovery may be expedited in appropriate circumstances. Fed.R.Civ.P. 30(a)(2)(A)(iii), 33(a), 33(b)(2), 34(b), and 45. **Expedited discovery is particularly appropriate in the preliminary injunction context.**  *See, e.g., Fimab-Finaziaria Maglificio Biellese Fratelli Fila Sp.A. et al. v. Helio Import/Export, Inc., et al.*, 601 F. Supp. 1, 3 (S.D. Fla. 1983); *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841 (D. D.C. 1996).  Such discovery "better enables the court to judge the parties' interests and respective chances for success on the merits." *Educata*

*Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn.) (granting expedited discovery), *aff'd in part and appeal dismissed in part*, 746 F.2d 429 (8th Cir. 1984).  Motions for expedited discovery are appropriate where the movant demonstrates a need to obtain inspection of documents in a shortened time period.  *See, Integra Bank N.A.*, 2007 U.S. Dist. LEXIS 2007 at *7-8.

Moreover, **"Courts allow discovery to identify Doe defendants, and courts allow expedited discovery where good cause is shown."**  *Pioneer Hi-Bred Int'l, Inc. v. Does*, Case No. 12-06046-cv-SJ-DGK, 2012 WL 12910607, at *1 (W.D. Mo. May 18, 2012) (granting expedited discovery from non-party to identify Doe Defendants' identities).  "Under the good cause standard, the party requesting expedited discovery must show that the need for expedited discovery, in consideration of [the] administration of justice, outweighs prejudice to [the] responding party."  *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008).  In *St. Jude Medical S.C., Inc. v. Biosense Sebster, Inc.*, 2013 U.S. Dist. LEXIS 53071 (M.D. Fla. April 12, 2013), the Court explained the good cause standard as follows:

> Factors courts consider in deciding whether a party has shown good cause include: (1) whether a motion for preliminary injunction is pending, (2) the breadth of the requested discovery, (3) the reason(s) for requesting expedited discovery, (4) the burden on the opponent to comply with the request for discovery, and (5) how far in advance of the typical discovery process the request is made.

*Id.* at *4-5 (citing *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D. D.C. 2006)).

*See also, Nassau Terminals, Inc. v. M/V Bering Sea*, 1999 U.S. Dist. LEXIS 23782 (M.D. Fla. July 1, 1999); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 209 F.R.D. 273, 276 (N.D. Cal. 2002).

In the instant matter, Plaintiff meets the "good cause" standard.  The discovery Plaintiff seeks is narrowly drawn and is requested because the information relevant to identifying JOHN DOE and resolving the issues of fact and law the Court must confront are in the possession, custody, and control of the Recipient Cryptocurrency Exchanges and other related non-parties.  Plaintiff reasonably believes that as time quickly passes, JOHN DOE will dissipate any funds in his thus-far-identified cryptocurrency wallets and account(s) -- thus putting JOHN DOE and his evidence beyond Plaintiff's

- 7 -

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

reach.  The burden on the Recipient Cryptocurrency Exchanges and related non-parties in having to respond to the discovery requests is *de minimis*, as all of the documents and information sought should be readily accessible by the Recipient Cryptocurrency Exchanges and non-parties.  Similarly, the burden on JOHN DOE is not only *de minimis* but would actually serve to fulfill JOHN DOE's right to due process in defending himself -- once he appears in this matter -- against the claims of theft and conversion that have been alleged against him.  Lastly, although the request is being made in advance of the typical discovery process, it is only being made because JOHN DOE's true identity is unknown and because Plaintiff's reasonable fear that JOHN DOE will dissipate Plaintiff's stolen cryptocurrency assets in an effort to put those assets, any evidence of location where they were ultimately transferred, out of Plaintiff's reach.

In short, because application of the ordinary discovery timetable would not properly suit the parties in light of JOHN DOE's unknown identity and the allegations posed by Plaintiff's Complaint, and because good cause exists to permit a limited round of discovery related to the issues raised by the Complaint; the Court is requested to issue an Order directing expedited discovery.

## **CONCLUSION**

For the foregoing reasons, Plaintiff ANDREW ASTROVE respectfully moves this Honorable Court for entry of an Order granting this motion and permitting Plaintiff to engage in expedited discovery from any relevant third-parties to enable Plaintiff to secure documents and information pertaining to Defendant JOHN DOE's identity forthwith.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Respectfully submitted,

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:     (954) 516-6000

By: _____
      DAVID C. SILVER
      Florida Bar No. 572764
      E-mail: DSilver@SilverMillerLaw.com
      JASON S. MILLER
      Florida Bar No. 072206
      E-mail: JMiller@SilverMillerLaw.com
  - and -

ERIC F. ROSENBERG [*Pro Hac Vice* - DE 7]
E-mail: ERosenberg@SilverMillerLaw.com
**SILVER MILLER**
5400 Kenilworth Avenue
Riverdale, Maryland 20737
Telephone:     (240) 516-6000

*Counsel for Plaintiff Andrew Astrove*

Dated:   May 11, 2022