# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-80614-RAR

**ANDREW ASTROVE**,

     Plaintiff,

v.

**JOHN DOE**,

     Defendant.

_____/

## <u>ORDER GRANTING PRELIMINARY INJUNCTION</u>

**THIS CAUSE** came before the Court for hearing on June 15, 2022 [ECF No. 23] ("Hearing") on Plaintiff's Motion for Entry of a Preliminary Injunction as a corollary to Plaintiff's Emergency Motion for Entry of a Temporary Restraining Order Without Notice against Defendant JOHN DOE [ECF No. 3] ("Motion").

On April 22, 2022, the Court entered a Temporary Restraining Order against JOHN DOE freezing certain Destination Addresses (defined and identified in the TRO) to which cryptographic tracing had traced the path of the digital assets stolen from Plaintiff [ECF No. 4].  Subsequently, the Court modified/extended that Temporary Restraining Order on May 3, 2022 [ECF No. 12], May 17, 2022 [ECF No. 17], and on June 2, 2022 [ECF No. 21].

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (citing *McDonalds Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).  "The purpose of a preliminary injunction is to preserve the positions of the parties as best we can until

a trial on the merits may be held." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 968 (11th Cir. 2005). In considering these factors, a court may properly consider evidence that would ordinarily be inadmissible, such as hearsay, in support of the grant of a preliminary injunction. "The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding." *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 3d 1333, 1341–42 (S.D. Fla. 1988) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

Moreover, Rule 64 of the Federal Rules of Civil Procedure provides that when state law authorizes a prejudgment remedy to secure assets subject to a plaintiff's state law claims, state law governs such relief. Fed. R. Civ. P. 64; *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974). Here, Plaintiff seeks pre-judgment equitable relief to secure his stolen cryptocurrency assets based on the state law claims asserted in the Complaint for preliminary injunction, fraudulent inducement, negligent misrepresentations, replevin, conversion, unjust enrichment, and imposition of a constructive trust/disgorgement of funds. *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734–35 (11th Cir. 2005) (finding that *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) does not bar the freezing

of assets through injunctive relief to preserve them for equitable relief, such as disgorgement); *Developers Sur. and Indem. Co. v. Bi-Tech Const., Inc.*, 979 F. Supp. 2d 1307, 1316–17 (S.D. Fla. 2013) ("Orders freezing assets and prohibiting transfers from bank accounts are routine methods of enforcing injunctive relief, even if they are directed to third parties in possession of the funds.").

The Eleventh Circuit has long recognized that district courts have the inherent power to freeze a defendant's assets to ensure the availability of equitable relief. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the district court had authority to freeze assets that could have been used to satisfy equitable relief sought). Accordingly, when assets can be held or moved by third parties on behalf of a defendant, courts routinely issue orders freezing and transferring assets to enforce equitable relief that extend to those third parties. *See, e.g.*, *CFTC v. Fingerhut*, No. 20-CV-21887, 2021 U.S. Dist. LEXIS 2653, at *15–18 (S.D. Fla. Jan. 7, 2021) (granting injunction and asset freeze against defendants in digital asset fraud scheme); *FTC v. Dluca*, No. 18-CV-60379, 2018 U.S. Dist. LEXIS 192310, at *6–7 (S.D. Fla. Apr. 16, 2018) (granting injunction and asset freeze where defendants allegedly secured payments from customers under the false guise of earning income through purported cryptocurrency investments); *Gucci Am. Inc. v. 2005qihui8*, No. 15-CV-61649, 2015 U.S. Dist. LEXIS 180268, at *15–17 (S.D. Fla. Aug. 12, 2015) (granting preliminary injunction ordering third-party PayPal to freeze defendants' assets and divert those assets to a holding account for the trust of the court).

Federal courts across the country likewise routinely issue freeze and transfer orders that extend to both defendants and third parties with custody or control over such assets. *Williams v. Doe*, No. 21-CV-03074-RK (W.D. Mo. Apr. 23, 2021), ECF No. 47 (preliminary injunction entered against John Doe defendant, ordering freeze of defendant's cryptocurrency assets); *SEC v. Stefan Qin*, No. 20-CV-10849 (LGS) (S.D.N.Y. Jan. 6, 2021), ECF No. 27 at 3–4 (ordering third

parties to freeze defendant's crypto assets); *Amazon Content Servs. LLC v. Kiss Library*, No. 20-CV-01048, 2020 U.S. Dist. LEXIS 155676, at *9–11 (W.D. Wash. Aug. 27, 2020), (ordering payment processors, such as BitPay, PayPal and MasterCard, who receive notice of the order to immediately locate defendants' accounts and temporarily restrain and enjoin withdrawal or disposal of the assets); *SEC v. Blockvest*, No. 18-CV-2287, 2018 U.S. Dist. LEXIS 179424 (S.D. Cal. Oct. 5, 2018) (*ex parte* ruling in SEC enforcement action freezing defendants' digital assets at financial institutions and coin exchanges and ordering third parties to hold and not transfer those assets).

Further, under Fed. R. Civ. P. 65(a)(1), a preliminary injunction may issue "only on notice to the adverse party." The record includes sufficient evidence demonstrating that the relevant parties, third parties, and non-parties-of-interest were notified of the Hearing on the Motion and provided a fair opportunity to represent their interests before entry of this Order. Specifically, Plaintiff's counsel expeditiously served upon those non-parties-of-interest a copy of the Temporary Restraining Order, subpoenas seeking documents and information relevant to those non-parties' potential interests in this dispute and notice of the hearing on the Motion. [ECF No. 22-1]. Additionally, one of those non-parties (Trans Galactic Trading FZ) appeared at the hearing on the Motion through counsel and a corporate representative of the company. Based on the foregoing, the Court is satisfied that JOHN DOE, among others, were provided due notice of the preliminary injunction hearing and afforded a fair opportunity to represent their interests in this matter.

Having reviewed the Motion, the Complaint, the sworn Declaration of Andrew Astrove (verifying several factual allegations in the Complaint) [ECF No. 3-1], the record; and having heard oral argument at the Hearing, including the expert testimony from Roman Bieda, and being

otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion [ECF No. 3] to convert the Temporary Restraining Order issued by this Court into a Preliminary Injunction is **GRANTED**.

### A. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS CLAIMS

Plaintiff has shown a substantial likelihood of success on the merits of his claims against Defendant JOHN DOE for: (1) fraudulent inducement, (2) negligent misrepresentation, (3) replevin, (4) conversion, and (5) unjust enrichment as well as for imposition of a constructive trust and disgorgement of funds held by JOHN DOE in the Destination Addresses (defined below) to which JOHN DOE transferred any portion of the funds stolen from Plaintiff.

Under Defendant's guidance, Plaintiff opened a cryptocurrency account at U.S. based cryptocurrency exchange Coinbase, which Plaintiff funded with monies that were used to purchase cryptocurrency that was subsequently transferred to what Plaintiff believed was another cryptocurrency exchange, "MINE DIGITAL."  Plaintiff funded his Coinbase account with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00).  He then used those funds to purchase Tether[1], and sent those Tether to an investment account allegedly created for Plaintiff that was overseen by Defendant JOHN DOE.

According to Defendant, the external investment account into which Plaintiff's Tether was being deposited was maintained at Australian cryptocurrency exchange Mine Digital.  Defendant provided Plaintiff Mine Digital's purported exchange website URL as: "MCWLEX.xyz" and

---

[1]  Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains.  It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth One Dollar ($1.00 USD).  Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00.  Tether has one of the largest market caps and is one of the most widely-circulated cryptocurrencies in the world.

instructed Plaintiff to set up his cryptocurrency account there.  As Plaintiff later learned, the correct website URL for Mine Digital is "minedigital.exchange" not "MCWLEX.xyz."

Evidence in the record suggests Defendant cloned the real Mine Digital website so that his cloned copy would appear to be a legitimate cryptocurrency exchange.  The cloned site to which Defendant directed Plaintiff was not legitimate; it served as an engine of theft for Defendant, providing him a mechanism to proffer Plaintiff false account statements and real-time values of cryptocurrency markets on legitimate exchanges that masked the fraudulent scheme Defendant was perpetrating upon Plaintiff.  In essence, the "Mine Digital account" to which Plaintiff was sending his cryptocurrency holdings was, and unbeknownst to Plaintiff, Defendant's own private cryptocurrency address.

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant.

For example, some of Plaintiff's stolen assets ("Property") have been traced to the following cryptocurrency wallet addresses at cryptocurrency exchanges FTX, KRAKEN, OKX (OKEx), BINANCE, GATE.IO, and ZB.COM — wallet addresses which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets, and which have been used to launder the assets stolen from Plaintiff:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | FTX | e9d3aa47497e63d27916ec0947174e2f778581bb | USDT | 380,056.73823 USDT |
| 2. | Kraken | 57ae39494b91f947866b86d9655c0e7fdc093f14 | USDT | 169,304.42112 USDT |
| 3. | Bitfinex.com /Crypto.com | d4dcd2459bb78d7a645aa7e196857d421b10d93f | USDT | 83,401.620357 USDT |
| 4. | OKX (OKEx) | 39243d72d9c26d26bd8317838908e7f2682af284 | USDT | 80,060.512581 USDT |
| 5. | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 60,978.520990 USDT |
| 6. | FTX | ccfaedbcfe19f10607ce7f9b0d64295d979b606d | USDT | 38,726.667998 USDT |
| 7. | gate.io | 49b8229ddd86b47e6ebab43bd54b71e80aff3a0f | USDT | 18,910.227524 USDT |
| 8. | ZB.com | 15df4ca7b60d09f0070e4c42ef08031c73167686 | USDT | 5,908.5983 USDT |
| | | | TOTAL | **837,347.3072 USDT** |

In addition to the foregoing, blockchain analytics have traced Plaintiff's stolen Property to and/or through the following cryptocurrency wallet addresses (among others), which the evidence suggests are owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets, and which are believed to still be holding some of the assets stolen from Plaintiff:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 431758befb274b88599401a1d7445dcb50c71122 | USDT | 11,721.149170 USDT |
| 2 | e7b36e1a636d31aa3d2e8918f80fecdb41f8cd6d | USDT | 7,704.7557322 USDT |
| 3 | e0fe2b4c9f7d58a05b4a16b71ef8afb42557aef2 | USDT | 5,980.596504 USDT |
| 4 | 7b6d0d7a60f3b14f721195c0d289807e9dde9559 | USDT | 2,444.308878 USDT |
| | | TOTAL | **27,850.81028 USDT** |

As a result of the foregoing scheme, Plaintiff has lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left seeking a remedy to recapture his stolen Property and determine where his assets went after they were stolen by JOHN DOE.  The cryptocurrency assets at issue are specific, identifiable property and can be traced to JOHN DOE's assets in the Destination Addresses or elsewhere.   JOHN DOE has not demonstrated any justification permitting him to retain control over those assets.

**B.  PLAINTIFF WILL SUFFER IRREPARABLE INJURY IF THE TRANSFER OR ENCUMBRANCE OF HIS STOLEN PROPERTY IS NOT ENJOINED**

If Defendant JOHN DOE is allowed to transfer or encumber the Property, the value and/or equity in the Property will be lost; and any rights Plaintiff would have to recover the Property would be lost.  If the Property is sold, Defendant JOHN DOE will have successfully put Plaintiff's stolen funds beyond Plaintiff's reach.  Thus, Plaintiff will therefore be irreparably harmed absent preliminary injunctive relief.

Moreover, considering the speed with which cryptocurrency transactions are made, and the anonymity of those transactions, it is imperative to freeze the Assets Under Claim in the

Destination Addresses to maintain the *status quo* and avoid dissipation of the money illegally taken from Plaintiff.

### C. <u>THERE IS LITTLE PREJUDICE TO DEFENDANT IF THE INJUNCTION IS ENTERED</u>

The balance of hardships also favors Plaintiff because a preliminary injunction would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a trial on the merits of Plaintiff's claims. While Plaintiff would be severely prejudiced if the stolen cryptocurrency were transferred and lost, Defendant JOHN DOE faces no such prejudice. Defendant JOHN DOE will not lose the Property by virtue of the injunction. He will simply be prohibited from selling, transferring, or encumbering the Property while this litigation moves forward. Ultimately, if Plaintiff succeeds in obtaining a judgment against JOHN DOE in this proceeding, the Property will be subject to collection by Plaintiff and may be sold to repay Plaintiff the money stolen from him by JOHN DOE. Alternatively, if Plaintiff's claims fail, the property will remain in the accounts identified.

Thus, while the prejudice to Plaintiff is severe if the Property is not subject to an injunction preventing it from being transferred away, maintaining the *status quo* does not affect Defendant JOHN DOE in any detrimental manner. *See Crawford v. Silette*, 608 F.3d 275, 279 (5th Cir. 2010) (applying Florida law). Counsel for Plaintiff has agreed to work expeditiously with any alleged bona fide purchaser in good faith to resolve any claim of interest from such a non-party whose property or business interests have been directly affected by this Preliminary Injunction. If the dispute between the parties-in-interest cannot be amicably resolved between them — and the non-party-in-interest claims any of the assets encumbered by this Order are his/her/its own — those parties-in-interest, or any one of them, shall bring the dispute before the Court for resolution upon a properly addressed motion and request for relief.

### D.  PLAINTIFF HAS NO ADEQUATE REMEDY AT LAW

Plaintiff's only remedy to recover the Property is through his right to equitable relief in the form of an injunction to prevent the dissipation of the Property.  A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in the Property.  In fact, the typical remedy is the subject requested injunctive relief to freeze and disgorge to Plaintiff the Property at issue.

### E.  ENTERING AN INJUNCTION IS IN THE PUBLIC INTEREST

Entering a preliminary injunction would serve the public interest by preserving the integrity of Money Services Businesses (of which several of the cryptocurrency exchanges noted above are qualified), preserving and stabilizing the worldwide use of cryptocurrencies, and promoting the objectives of the Financial Crimes Enforcement Network ("FinCEN") (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the Property in this action.

### F.  THE IMPOSITION OF A BOND IS UNNECESSARY

Courts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all.  *BellSouth Telecom., Inc. v. MCI Metro Access Transmission Svcs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005); *Towbin v. Antonacci*, 885 F. Supp. 2d 1274, 1295 (S.D. Fla. 2012).  Here, under the subject circumstances, including that a freeze by FTX and Kraken has been in place on the Assets Under Claim in the noted Destination Addresses since the outset of this action, the Court has determined that it would be appropriate not to require Plaintiff to post any bond as a condition of issuing this preliminary injunction.

### G.  <u>CONCLUSION</u>

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      Plaintiff's Motion for Entry of a Preliminary Injunction [ECF No. 3] against Defendant JOHN DOE is **GRANTED**.

2.      Until a final adjudication of the parties' rights is made on the claims asserted against Defendant JOHN DOE in the Complaint, or until further Order of the Court, Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) the Assets Under Claim in the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

3.      The Court further orders that the following private cryptocurrency wallets which, as of the date of this Order, are believed to be storing bitcoin stolen from Plaintiff, are likewise temporarily restrained from withdrawing, transferring, or encumbering any assets held in those wallets:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 431758befb274b88599401a1d7445dcb50c71122 | USDT | 11,721.149170 USDT |
| 2 | e7b36e1a636d31aa3d2e8918f80fecdb41f8cd6d | USDT | 7,704.7557322 USDT |
| 3 | e0fe2b4c9f7d58a05b4a16b71ef8afb42557aef2 | USDT | 5,980.596504 USDT |
| 4 | 7b6d0d7a60f3b14f721195c0d289807e9dde9559 | USDT | 2,444.308878 USDT |
| | | TOTAL | **27,850.81028 USDT** |

4.      Further, the Court exercises its discretion to not require a bond as a condition for entry of the injunction.

5.      The terms and conditions of this Order are immediately effective and enforceable upon its entry.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 17th day of June 2022.

**RODOLFO A. RUIZ, II**
**UNITED STATES DISTRICT JUDGE**